Milton A. Wiltse, J.
Defendant was convicted of violation of subdivision 3 of section 56 of the Vehicle and Traffic Law, after a trial on April 12, 1958, before Honorable Ernest J. Staldeb, Justice of the Peace of the Town of Leray. From the judgment of conviction entered on that date, he has appealed.
Several errors are alleged, which the defendant urges, require a reversal of the judgment of conviction. He appears to mainly rely, however, upon the allegations that it is contrary to the weight of the credible evidence, and that he was not proved guilty beyond a reasonable doubt.
Testimony of two Deputy Sheriffs, Smith and Kirk, witnesses in the People’s case, in substance, is: Smith was driving. Kirk was in the front seat with him. They were proceeding in their vehicle from West Carthage toward Watertown about 10 o’clock in the evening on March 6, 1958. They noticed a school bus ahead of them. At the Village of Black Biver, they saw the bus pass an automobile near a caution light. At, or near the westerly limits of Black Biver Village, they followed the bus and car for approximately nine tenths of a mile, while 1 ‘ clocking ’ ’ the speed of the bus. Its speed, based on estimates and speedometer readings, was over 70 miles per hour. They were about 300 feet behind the bus and 225 feet behind the car. The view of the defendant’s bus was not obscured. Each had been connected with the Jefferson County Sheriff’s Department for two and one-half years, and had operated automobiles for many years prior thereto, had estimated the speed of vehicles, and distances, checking estimates against speedometers and other devices during all of such periods, on many occasions. The estimates of speed and distance were either correct or close. Some months prior to the date of the alleged offense, Smith had caused his speedometer to be checked with a master speedometer. Four days after the occurrence it had been checked again at the same speedometer testing station. On each occasion Smith’s speedom *583 eter registered a slightly higher reading than the master speedometer. This variation prior to, and after the event, was exactly the same.
The above resulted in the charge against the defendant. Just before the Sheriff’s car had reached a point opposite the bus, prior to stopping it, the car following the bus had passed same. Incidentally, that car operator was also charged with “speeding”.
The substance of the testimony for the defense is: Defendant stated he was returning members of a basketball team to Water-town after a game at Carthage; that he was stopped by the deputies, given a traffic ticket upon which his speed was written as 65 to 70 miles per hour; that his bus would only go 58 miles per hour; that the bus was ‘ ‘ governed ” at 58 miles; that it was equipped with a tachograph — an instrument that indicates speed as does a speedometer, and also shows, when a card is inserted, through marks made on the card by a needle attachment, the speed, duration, and stops of any trip; that no card had been inserted that night; that he had looked at the speedometer portion of the tachograph during the nine tenths of a mile distance, that his speed might have been slightly over 50 for an instant; that it was never over 50 for a distance of one fourth of a mile; that the governor on the motor had been cleaned on February 13, 1958, and the tachometer checked on March 11, 1958, and was accurate; that the bus had been checked on April 9, 1958 for speed, and would only go 57 miles per hour, but at that time, it was not checked with any other car or device, the speed of 57 miles being what his speedometer showed only.
For the defense, a tachometer testing expert testified regarding the test on March 11, stating in substance, on cross-examination: that the tachograph accuracy depended upon the part of the instrument visible from within the bus, and a cable attached to same that is not visible; that the defendant brought the visible portion of the tachograph, without the cable, to his station for testing; that only the part brought there was tested, and that his testimony as to accuracy only related to the portion of the instrument that the defendant delivered to him.
The garage mechanic that had cleaned the governor on February 13, testified, in substance: that he did not adjust the governor, or test it in connection with the bus motor, or any other device, and that he only cleaned it.
This same mechanic, together with the defendant, did drive the bus on April 9, and the tachograph then would register no more than 57 miles per hour. From the testimony, however, *584 the only thing this test showed was that the tachograph did register such speed. Neither was a complete test of the accuracy of all parts of the tachograph ever made, nor was the speed registered on the bus checked against any other vehicle or device, nor was there any proper opinion testimony as to the bus speed given by any defense witness that related to the time of the road test or to the time of the occurrence. Further, the governor controlling the revolutions per minute of the motor, in turn affecting the speed registered on the tachograph, had never been checked in any way — “ only cleaned ”.
The tests relied upon by the defendant, therefore, only show that the bus and its aforesaid equipment were in operation, and not necessarily accurate operation.
Two passengers on the bus when the defendant was stopped, testified that the speedometer portion of the tachograph indicated a speed between 50 and 55 miles per hour just before the deputies stopped the bus, and as their car was traveling beside the bus with its red light flashing.
The information charges the defendant with operating the bus, “ at a rate of speed in excess of fifty miles per hour ”. Concededly the speed limit was 50 miles per hour where the offense allegedly occurred.
In this case, if the testimony of the People’s witnesses was believed by the court that heard it, there was sufficient proof of the defendant’s guilt beyond a reasonable doubt. The court found the defendant guilty as charged in the information. To do so, he must have found the testimony of the People’s witnesses to be credible.
Even the testimony for the defense reveals that for at least some of the nine tenths of a mile distance, when the “ clocking ” took place, the defendant was operating the bus at a rate of speed in excess of 50 miles per hour.
Considering all of the above, the court did not err in failing to grant motions of the defendant to dismiss the information and discharge the defendant at the close of the People’s case and at the close of all of the evidence.
Other errors alleged by the defendant are not considered prejudicial to any substantial right of the defendant. (Code Crim. Pro., § 764.)
The facts in this case differ materially from those in People v. Marsellus (9 Misc 2d 1030) and People v. Greenhouse (4 Misc 2d 692), both decided in this court, and in each of which there was a reversal of the judgments of conviction entered in a Court of Special Sessions, because the People had failed to prove beyond a reasonable doubt that the defendant was ‘ ‘ Speeding ’ ’.
*585 Under the record here, the evidence is sufficient to sustain the conviction. (People v. Heyser, 2 N Y 2d 390; People v. Knowles, 20 Misc 2d 859.)
The judgment should be affirmed.